UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

    Plaintiff,

v.          Case No.

APPROXIMATELY $67,194.00 IN UNITED STATES CURRENCY, and

APPROXIMATELY $18,040.00 IN UNITED STATES CURRENCY,

    Defendants.

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Elizabeth M. Monfils, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1. This is a civil action to forfeit property to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

### The Defendants In Rem

2. The defendant property, approximately $67,194.00 in United States currency, was seized on or about June 27, 2024, from Carmen Purvis, Octavion Spencer, and Deonte Brownlow at 6XXX North 60th Street, Apt. 2XX, Milwaukee, Wisconsin.[1]

---

[1] Throughout this complaint, certain information has been redacted using the letter "X" as a means of avoiding the revelation of any personal information.

3. The defendant property, approximately $18,040.00 in United States currency, was seized on or about June 27, 2024, from Carmen Purvis, Octavion Spencer, and Deonte Brownlow at 6XXX North 60th Street, Apt. 2XX, Milwaukee, Wisconsin.

4. The defendant properties are presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant properties under 28 U.S.C. § 1355(b).

7. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

## Basis for Forfeiture

8. The defendant property, approximately $67,194.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

9. The defendant property, approximately $18,040.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

## Facts

10. Heroin is a Schedule I controlled substance under 21 U.S.C. § 812.

11. Marijuana is a Schedule I controlled substance under 21 U.S.C. § 812.

12. Fentanyl is a Schedule II controlled substance under 21 U.S.C. § 812.

13. Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812.

14. On or about January 27, 2016, Carmen Purvis pleaded guilty to a felony count in Milwaukee County Circuit Court, Case No. 15CF1884. Since on or about January 27, 2016, Carmen Purvis has been, and remains, a convicted felon. As a convicted felon, Carmen Purvis is prohibited from possessing a firearm.

15. On or about February 2, 2018, Octavion Spencer pleaded guilty to felony counts in Milwaukee County Circuit Court, Case Nos. 17CF4386 and 17CF5333. Since on or about February 2, 2018, Octavion Spencer has been, and remains, a convicted felon. As a convicted felon, Octavion Spencer is prohibited from possessing a firearm.

16. On or about August 23, 2010, Deonte Brownlow pleaded guilty to a felony count in Milwaukee County Circuit Court, Case No. 10CF2635. Since on or about August 23, 2010, Deonte Brown has been, and remains, a convicted felon. As a convicted felon, Deonte Brownlow is prohibited from possessing a firearm.

17. On or about January 23, 2012, Raheem Williams pleaded guilty to a felony count in Milwaukee County Circuit Court, Case No. 11CF5237. Since on or about January 23, 2012, Raheem Williams has been, and remains, a convicted felon. As a convicted felon, Raheem Williams is prohibited from possessing a firearm.

**Background investigation**

18. In early 2023, officers began investigating the drug trafficking activities of Raheem Williams (the "Williams investigation"). At that time, Williams drove a Dodge Durango ("Williams' Durango").

19. During the Williams investigation, officers executed search warrants at four residences associated with Raheem Williams and seized, among other things, the following:

    A. A total of more than six kilograms of heroin, fentanyl, and cocaine (combined weight).

    B. More than 40 pounds of marijuana.

    C. One semi-automatic rifle and two semi-automatic handguns.

    D. Body armor.

    E. Digital scales.

    F. Money counters and approximately $7,000 in United States currency.[2]

20. On May 13, 2024, an officer saw Raheem Williams exit Williams' Durango, which was parked on North 61st Street, directly to the west of the apartment complex located at 6XXX North 60th Street, Milwaukee, Wisconsin (the "N. 60th Street apartment"). After exiting the vehicle, Williams walked to the north entry/exit door of the N. 60th Street apartment.

**Surveillance and trash pulls at 6XXX North 60th Street, Milwaukee, Wisconsin**

21. On June 7, 2024, surveilling officers at the N. 60th Street apartment saw Williams' Durango parked in the rear parking lot of the apartment complex. Officers also saw the following:

    A. At approximately 4:21 p.m., Carmen Purvis walked toward the north entry/exit door of the N. 60th Street apartment. Carmen Purvis is Raheem Williams' brother.

    B. When Carmen Purvis arrived at the north entry/exit door of the N. 60th Street apartment, Raheem Williams opened the door from the inside. Purvis

---

[2] The approximately $7,000 is not a defendant property in this case.

then entered the N. 60th Street apartment. Williams walked outside, entered his Durango, and drove away from the location.

    C.    At approximately 4:45 p.m., Carmen Purvis and Octavion Spencer walked from the direction of the north entry/exit door of the N. 60th Street apartment and walked to a Ford vehicle ("Spencer's Ford"). Spencer entered the Ford vehicle and drove away from the location. Purvis walked back and entered the north entry/exit door of the N. 60th Street apartment.

22.    On June 12, 2024, surveilling officers at the N. 60th Street apartment saw Spencer's Ford parked in the rear parking lot of the apartment complex. Officers also saw the following:

    A.    At approximately 10:47 a.m., Octavion Spencer exited the north entry/exit door of the N. 60th Street apartment complex wearing a blue cross-body bag and carrying three bags. The three bags Spencer was carrying are identified as follows:

        i.    Bag A was a white kitchen trash sized garbage bag with red drawstrings.

        ii.    Bag B was a black convenience store sized grocery bag.

        iii.    Bag C was a gray convenience store seized grocery bag.

    B.    Octavion Spencer discarded Bag A, Bag B, and Bag C in the common dumpster located at the N. 60th Street apartment complex, entered his Ford vehicle, and drove away from the location.

    C.    After Octavion Spencer drove away from the N. 60th Street apartment, officers collected Bag A, Bag B, and Bag C from the common dumpster of the apartment complex and transported the three bags to their District station for analysis.

        i.    Bag A contained, among other things, the following:

            a.    Four sandwich bags, two of which contained a gray powdery residue. The residue from one bag weighed approximately 0.05 grams and tested positive for fentanyl. The residue from the other bag was non-weighable and tested positive for fentanyl.

            b.    Three marijuana tobacco cigar leaf ends containing approximately 0.25 grams of marijuana.

5

       c. A Styrofoam cup containing approximately 31.13 grams of an unknown white powder suspected to be a narcotic cutting agent.

       d. Five blue latex gloves, two with a white powder suspected to be a narcotic cutting agent.

   ii. Bag B contained no narcotic-related trash.

   iii. Bag C contained, among other things, the following:

       a. One sandwich bag containing a gray powdery residue. The residue was non-weighable and tested positive for fentanyl.

       b. Two blue latex gloves with a tan powdery residue. The residue was non-weighable and tested positive for heroin and fentanyl.

23. The tenant list for the N. 60th Street apartment complex listed an individual having the initials R.G. as the tenant of apartment number 2XX beginning on February 15, 2024. A WE Energies utility account for apartment number 2XX at the N. 60th Street apartment complex had been active since February 15, 2024, in the name of R.G. R.G. is Octavion Spencer's uncle.

24. Based on their training and experience, officers know that large-scale drug traffickers often purchase, rent/lease, or title their assets in fictitious names, aliases, and/or in the names of relatives and associates of business entities to avoid detection by government agencies and law enforcement.

25. On June 20, 2024, pursuant to a "canine sniff" search warrant, a drug detection canine conducted a sniff of the front door of apartment number 2XX at the N. 60th Street apartment complex. The canine gave a positive alert to the odor of a controlled substance within apartment number 2XX.

**June 25, 2024 execution of search warrant at 8XXX West Mill Road, Apt. X, Milwaukee, Wisconsin – the residence of Raheem Williams**

26. On June 25, 2024, officers executed a search warrant at 8XXX West Mill Road, Apt. X, Milwaukee, Wisconsin (the "W. Mill Road apartment"), which is the residence of Raheem Williams.

27. Officers arrested Raheem Williams as he was exiting the door of the 8XXX West Mill Road apartment complex.

28. On Raheem Williams' person at the time of his arrest were, among other things, approximately $95,000 inside a duffel bag that Williams was carrying and approximately $2,920 inside Williams' pocket.[3]

29. No one was present inside the W. Mill Road apartment at the time officers executed the search warrant.

30. On June 25, 2024, the following items, among other things, were inside the W. Mill Road apartment:

    A. A semi-automatic handgun loaded with 12 rounds of ammunition in the magazine and one round of ammunition in the chamber.

    B. An empty Mylar marijuana pound bag inside a black suitcase.

    C. Ten Mylar bags containing a total of approximately 4,040 grams of marijuana inside a blue suitcase.

    D. Two Mylar bags containing a total of approximately 905 grams of marijuana inside a gray suitcase.

31. On June 25, 2024, inside Raheem Williams' Durango that was parked at the W. Mill Road apartment were, among other things, the following:

    A. A semi-automatic handgun loaded with 24 rounds of ammunition in the magazine and one round of ammunition in the chamber.

---

[3] Neither the approximately $95,000 nor the approximately $2,920 are defendant properties in this case.

B. Wells Fargo credit cards in the names of Raheem Williams and Carmen Purvis.

C. A Spirit airline boarding pass in the name of Carmen Purvis.

D. Identifying documents in the name of Raheem Williams.

**June 27, 2024 execution of search warrant at 6XXX North 60th Street, Apt. 2XX, Milwaukee, Wisconsin**

32. On June 27, 2024, officers executed a search warrant at 6XXX North 60th Street, Apt. 2XX, Milwaukee, Wisconsin (the "N. 60th Street apartment").

33. Carmen Purvis, Octavion Spencer, Deonte Brownlow, and a minor child were present at the N. 60th Street apartment during execution of the search warrant.

34. The kitchen of the N. 60th Street apartment did not have a refrigerator, microwave, or food. Most of the items located inside the living room and kitchen were narcotic or firearm related.

35. Based on their training and experience, officers believe that the N. 60th Street apartment was being maintained primarily as a drug trafficking place.

36. On June 27, 2024, the following items, among other things, were inside the N. 60th Street apartment:

    A. In the kitchen were the following:

        i. In a trash container were one empty Mylar marijuana pound bag and one Mylar marijuana pound bag that contained miscellaneous kilogram wrappers. One of the kilogram wrappers contained approximately 1.44 grams of heroin residue and a second kilogram wrapper contained approximately 0.11 grams of cocaine residue.

        ii. Sixteen empty Mylar marijuana pound bags inside a box for an 86-inch television.

        iii. A money counter on the counter.

        iv. Three Mylar marijuana bags that contained a total of approximately 10.37 grams of marijuana.

v. A bowl, plate, and two bags that all contained cocaine residue. The combined weight from the bowl and plate was approximately 0.31 grams of cocaine residue.

vi. One 8mg Suboxone sublingual strip.

vii. Approximately 120 empty Mylar marijuana bags (3.5 ounce size).

viii. Identifying documents for Octavion Spencer and Deonte Brownlow.

ix. An open box of exam gloves and an N95 mask inside a kitchen cabinet.

x. Two N95 masks on the counter.

xi. A blender bottom and bag that both contained cocaine residue.

xii. One functional and three non-functional digital scales with cocaine residue.

xiii. Three razor blades with cocaine residue.

xiv. Two open boxes of baggies.

xv. Seven empty prescription promethazine bottles.

xvi. A Magic Bullet brand blender and bags on the kitchen counter.

xvii. A blender, a plastic bag, and a Mylar bag on the floor.

xviii. A Spirit airline payment receipt for June 23, 2024.

xix. Two baggies that had an unknown white substance (approximately 3.3 grams and approximately 4.45 grams) that did not test positive for heroin, cocaine, or fentanyl.

xx. In the kitchen closet were the following:

   a. An AK drum-style firearm magazine.

   b. A box for a RWB AK-47 100 round drum-style firearm magazine.

   c. A box for a RWB .45 caliber, 40 round drum-style firearm magazine.

9

        d. A box for a Glock firearm.

        e. A .45 caliber drum-style firearm magazine.

        f. Two handgun magazines.

        g. Approximately 400 rounds of various types of ammunition.

B. In the living room were the following:

    i. On the armrest of a couch was a semi-automatic handgun with an empty extended magazine inserted.

    ii. On the floor near a couch was a semi-automatic handgun with wood foregrip loaded with 52 rounds of ammunition inside a magazine and one round of ammunition in the chamber as well as an empty extended magazine inserted.

    iii. On top of the coffee table were a Glock extended firearm magazine, a Glock speed loader, and a bag with an unknown white powder residue inside.

C. In the northeast bedroom were the following:

    i. Approximately $18,040.00 in United States currency that was scattered on the floor near the doorway.

    ii. One empty Mylar marijuana pound bag located on the floor.

D. In the northwest bedroom were the following:

    i. A gray backpack on the floor contained a black plastic grocery bag containing approximately $67,056.00 in United States currency, which is a portion of the defendant approximately $67,194.00 in United States currency. Near the backpack was green plastic wrapping that was identical to the kilogram wrapping found inside the marijuana pound bag that was located inside the kitchen trash container.

    ii. A blue cross-body bag that contained identifying documents for Octavion Spencer, approximately $138.00 in United States currency, and keys to the entry/exit door of the residence. This was the same cross-body bag that officers saw Spencer wearing on at least two occasions during surveillance. The approximately $138.00 is a portion of the defendant approximately $67,194.00 in United States currency.

37. Denominations of the approximately $18,040.00 in United States currency were 7-$100 bills, 22-$50 bills, 769-$20 bills, and 86-$10 bills.

38. Denominations of the approximately $67,194.00 in United States currency were 313-$100 bills; 94-$50 bills; 1,546-$20 bills; 21-$10 bills; 3-$5 bills; and 49-$1 bills.

**Drug-related evidence on telephone seized at the N. 60th Street apartment**

39. Law enforcement conducted a forensic download of a telephone believed to be used by Carmen Purvis that was seized during execution of the search warrant at the N. 60th Street apartment on June 27, 2024. The assigned telephone number was (414) 254-8XXX with an iCloud account of carmenpurXXXXX@yahoo.com.

40. Based on their training and experience, and the investigation to date, case agents believe the telephone contains evidence of drug trafficking and proceeds derived therefrom. The evidence includes, but is not limited to, the following:

   A. Several photographs depicting large amounts of United States currency. Some of these photographs show Carmen Purvis holding large amounts United States currency.

   B. Several photographs depicting marijuana, suspected crack cocaine, and assorted pills suspected to be methamphetamine or fentanyl.

   C. A photograph of a money counter adjacent to a large amount of United States currency and a digital scale.

   D. A photograph of a drug ledger with handwritten notes of different strains of marijuana and prices.

   E. A screenshot of a text string that showed Carmen Purvis was engaged in a suspected narcotics transaction.

**Raheem Williams' State Drug Case**

41. On June 30, 2024, Raheem Williams was charged – for the June 25, 2024 incident – in Milwaukee County Circuit Court, Case No. 24CF3112, with (1) possession with intent to

deliver THC, use of a dangerous weapon; (2) felon in possession of a firearm, (3) maintaining a drug trafficking place, and (4) bail jumping.

### Carmen Purvis's State Drug Case

42. On July 1, 2024, Carmen Purvis was charged – for the June 27, 2024 incident – in Milwaukee County Circuit Court, Case No. 24CF3130, with (1) maintaining a drug trafficking place, use of a dangerous weapon, as a party to a crime, and (2) two counts of felon in possession of a firearm, as a party to a crime.

### Octavion Spencer's State Drug Case

43. On July 1, 2024, Octavion Spencer was charged – for the June 27, 2024 incident – in Milwaukee County Circuit Court, Case No. 24CF3131, with (1) maintaining a drug trafficking place, use of a dangerous weapon, as a party to a crime, and (2) two counts of felon in possession of a firearm, as a party to a crime.

### Deonte Brownlow's State Drug Case

44. On July 1, 2024, Deonte Brownlow was charged – for the June 27, 2024 incident – in Milwaukee County Circuit Court, Case No. 24CF3129, with (1) maintaining a drug trafficking place, use of a dangerous weapon, as a party to a crime, and (2) two counts of felon in possession of a firearm, as a party to a crime.

### Administrative Forfeiture Proceedings

45. The DEA began administrative forfeiture proceedings against the approximately $67,194.00 in United States currency and the approximately $18,040.00 in United States currency on the ground that the seized currencies were used or intended to be used in exchange for controlled substances or were proceeds of trafficking in controlled substances.

46. On or about September 27, 2024, Ameenah Tate filed a claim with the DEA in the administrative forfeiture proceeding to the defendant properties, approximately $67,194.00 in United States currency and approximately $18,040.00 in United States currency.

### Warrant for Arrest In Rem

47. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

### Claims for Relief

48. The plaintiff alleges and incorporates by reference the paragraphs above.

49. By the foregoing and other acts, the defendant property, approximately $67,194.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

50. The defendant approximately $67,194.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

51. By the foregoing and other acts, the defendant property, approximately $18,040.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

52. The defendant approximately $18,040.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant properties be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant properties to

be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 23rd day of December, 2024.

Respectfully submitted,

GREGORY J. HAANSTAD
United States Attorney

By: *s/Elizabeth M. Monfils*
ELIZABETH M. MONFILS
Assistant United States Attorney
Wisconsin Bar No. 1061622
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: elizabeth.monfils@usdoj.gov

## Verification

I, Bryan Ayers, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration (DEA), that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 10 through 40 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 12/23/2024

s/Bryan Ayers
Bryan Ayers
Special Agent
Drug Enforcement Administration